Gus Mackris v. Commissioner.
Mackris v. Commissioner
Docket No. 16590.
United States Tax Court
1953 Tax Ct. Memo LEXIS 410; 12 T.C.M. (CCH) 9; T.C.M. (RIA) 53011; January 9, 1953
*411 Hubert P. Earle, Esq., for the petitioner. Charles J. Hickey, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The respondent determined the following deficiencies in income tax and penalties: Income
50%
25%
Year
Tax
Penalty
Penalty
1941
$ 1,197.35
$ 598.68
$299.34
1942
13,167.41
6,583.71
1943
11,115.44
5,158.26
1944
5,657.45
2,828.73
1945
1,599.58
799.79
By a second amendment to the answer respondent increased the deficiency and 50% penalty for 1945 to $2,856.92 and $1,428.46, respectively. The issues before us are as follows: (1) Has the statute of limitations run for the years 1941 through 1944? (2) Is a fraud penalty under section 293(b), I.R.C., due for the years 1941 through 1945? (3) Is a 25 per cent penalty under section 291(a), I.R.C., for failure to file a return for 1941 proper? (4) Has petitioner reported his true income for the years 1941 through 1945? (5) Is the Current Tax Payment Act of 1943 available to petitioner? Findings of Fact Some of the facts are stipulated and are so found. Petitioner, an *412 individual, and a resident of Chester, Pennsylvania, filed his income tax returns for the years 1942 through 1945 with the Collector of Internal Revenue for the First District of Pennsylvania. Petitioner did not file a 1941 return. In 1916 petitioner came to the United States as an immigrant; he was then 16 years old. Petitioner, together with his father and brother, worked in a restaurant until 1919; they then purchased a restaurant in Chester, Pennsylvania, and continued to operate it for a number of years. During some of the subsequent years (around 1927) petitioner was engaged in the bootlegging business. In 1932 petitioner purchased a building which contained a restaurant, parking space for automobiles, and an apartment upstairs. This building was in the Chester industrial area and only one block from a large shipbuilding yard. From the time he bought the building until 1935 petitioner permitted the former owners to operate the restaurant. Then, in 1935, he took over the operation of the restaurant and moved into the apartment. Shortly thereafter, as a result of a fire in the apartment, petitioner was convicted of arson. Later, one of the former restaurant operators sued *413 petitioner for criminal conversation and alienation of affections. During this civil suit petitioner testified that he had no bank account, and that he had no money to put in an account if he had one. At the conclusion of the trial, the jury awarded a judgment of $25,000 against petitioner; he later settled for $3,500. Petitioner sold liquor and beer in his restaurant. During the war years, because of increased employment in the shipbuilding yards, petitioner's business flourished, and his profits were greater than those in prior years. An accountant prepared petitioner's income tax returns for the years 1942 through 1944 from information supplied by petitioner. Petitioner prepared his own return for 1945. Petitioner destroyed his records each year after his returns were prepared. Respondent used the net worth method to reconstruct petitioner's net income for 1941 through 1945. There are large unexplained discrepancies between the net income reported by the petitioner and his income as determined by the net worth method. A summary of respondent's net worth statement, with our adjustments, is as follows: Net Worth Statement
12/31/40
12/31/41
12/31/42
12/31/43
12/31/44
12/31/45
Total Assets
$20,121.27
$21,499.13
$54,309.34
$66,804.57
$89,812.70
$99,061.48
Less wife's bank balance at
time of marriage
428.15
428.15
428.15
428.15
428.15
Net Assets
$20,121.27
$21,070.98
$53,881.19
$66,376.42
$89,384.55
$98,633.33
Less Depreciation
1,558.65
2,037.82
3,450.62
6,065.05
8,853.49
11,767.88
Net Depreciated Value of
Assets
$18,562.62
$19,033.16
$50,430.57
$60,311.37
$80,531.06
$86,865.45
Total Liabilities
$13,200.00
$11,615.31
$15,912.40
$ 506.50
$ 5,000.00
$ 205.00
Net Worth
$ 5,362.62
$ 7,417.85
$34,518.17
$59,804.87
$75,531.06
$86,660.45
Yearly increase in Net Worth
$ 2,055.23
$27,100.32
$25,286.70
$15,726.19
$11,129.39
Income taxes paid
1,065.24
5,197.57
7,775.77
Living expenses
6,644.06
5,540.00
5,480.00
2,480.00
3,000.00
Corrected Net Income
$ 8,699.29
$32,640.32
$31,831.94
$23,403.76
$21,905.16
Net Income reported on original
return
6,095.78
14,458.45
15,784.28
17,624.15
Unreported Income
$ 8,699.29
$26,544.54
$17,373.49
$ 7,619.48
$ 4,281.01
*414 Petitioner and respondent executed a consent agreement extending the statute of limitations upon assessment for income tax for the taxable year 1943 to June 30, 1948. The deficiency notice for the years 1941 through 1945 was mailed to petitioner on September 7, 1947. For each of the years 1941 through 1945 a part of the deficiency was due to fraud with intent to evade tax. Opinion Of the issues before us the first we must consider is the question of whether the statute of limitations bars the respondent from determining deficiencies for the years 1941 through 1944. No return was filed for the year 1941; therefore, the plea of the statute is not available to the petitioner for this year. Section 276 (a), I.R.C. The statute is not available as a defense for the year 1943 because the parties executed a waiver for that year. Section 276 (b). The year 1944 is not barred because the deficiency notice was mailed within three years after the due date for filing the 1944 return. Section 275 (a). This leaves only the year 1942 to be considered in the light of the statute of limitations. Respondent contends that the statute of limitations is not a bar for any *415 of the years before us because the petitioner filed false and fraudulent returns with intent to evade tax. Where false and fraudulent returns have been filed the assessment or court proceedings for collection may be undertaken at any time. Section 276 (a). However, before this section is applicable fraud must be proven by clear and convincing evidence, and that burden of proof rests upon the respondent. We have, with some adjustments, accepted the net worth statement as determined by respondent. From this statement we conclude that petitioner has grossly understated his net income for the years before us. It is not just a simple understatement for a single year or a simple omission of an item of income, but rather there is a pattern of consistent understatement of income year after year for five consecutive years. Petitioner has not presented a credible explanation for his consistent understatement of income. His annual destruction of his business records precludes a post-audit of his business activities. There is no way that we can corroborate the income as reported on his tax returns. We therefore look to his net worth statement as a record of his past earnings. Petitioner alleged *416 that he had approximately $45,000 to $50,000 in cash prior to the years before us, and he further alleged that the respondent's net worth statement failed to recognize this extensive cash holding. It is difficult to reconcile petitioner's testimony as to this cash with other statements he made in 1935 during his alienation of affections suit. He then testified that he had no money and no bank accounts. Arguendo, even assuming that petitioner had such a sum prior to 1940, there would still be some $14,000 to $19,000 of unreported income during the years before us. From the record as a whole we find and so hold that part of the deficiency for each of the years 1941 through 1945 was due to fraud with intent to evade tax. Therefore, the statute of limitations in unavailable to the petitioner for the year 1942; the statute is also unavailable for the other years before us because of the fraud and the other reasons mentioned above. Petitioner failed to file a 1941 return. The net worth statement for him indicates that he received income for that year. The petitioner has not demonstrated that his failure to file a return was due to reasonable cause and not due to willful neglect. Hence, *417 the penalty under section 291(a) is applicable to the year 1941. Once the fraud issue is resolved the burden of proof to disprove any remaining deficiencies is upon petitioner. In general petitioner agrees to the individual items in respondent's net worth statement. However, petitioner contends that certain items were capitalized when in fact they were repairs. Further, petitioner also objects to certain items which were included in "living expenses". The record indicates that petitioner has properly objected to some of these items and we have adjusted the net worth statement as was warranted by the evidence. Petitioner also alleges as error the fact that respondent failed to take into consideration the Current Tax Payment Act of 1943 as it affected the years 1942 and 1943. Again respondent must be sustained. Section 6(a) of the Act provides in part: "* * * This subsection shall not apply in any case in which the taxpayer is convinced of any criminal offense with respect to the tax for the taxable year 1942 or in which additions to the tax for such taxable year are applicable by reason of fraud." Our finding that part of the deficiency for each of the years 1942 and 1943 was *418 due to fraud precludes any relief for petitioner under this Act. See Arlette Coat Co., Inc., 14 T.C. 751, 756. Since we have adjusted the net worth statement as determined by respondent, the net income has also been adjusted. Therefore a Rule 50 computation to determine the correct deficiencies and penalties will be necessary. Decision will be entered under Rule 50.